**THE A. F. CO. NO. 4.**

**BOSTON INS. CO. v. PENNSYLVANIA R. CO.**

No. 11999.

District Court, E. D. New York.
Nov. 9, 1931.

146

William F. Purdy, of New York City (Frank C. Mason, of New York City, of counsel), for libelant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (George F. Tinker, of New York City, of counsel), for respondent.

GALSTON, District Judge.

This libel was filed by the Boston Insurance Company, as subrogee of the Alpine Forwarding Company, Inc., owner of the barge A. F. Co. No. 4. This barge was under the usual oral harbor charter to the Pennsylvania Railroad Company, for a term beginning June 7, 1929, for an indefinite period.

On June 7, 1929, the barge came into the service of the charterer. It was without motor power. The barge was returned by the charterer on or about July 8, 1929, with the port side of the freight house from midship aft in damaged condition.

It is undisputed that the damage occurred at Pier 14 Hoboken, where she was berthed at about 10:20 p. m. by the Pennsylvania tug Overbrook, which had her in tow. The damage arose from the unsafe condition of the pier.

The best evidence on this question is given by a disinterested witness, Elmer C. Conklin, who was the captain of the Keller, and who was working at Lamport and Holt's Pier No. 14 on the night in question. He said that there was a red light on the upper corner of Pier 14, and that the north side of the pier at which the No. 4 was berthed, was dangerous.

It appears that at this corner of the pier there was no piling, just a cheek piece and some spiles. The spiles on the outside corner were made fast with some wire. From the end of the pier and for a distance of about thirty-five feet towards the shore, underneath the string piece of the pier, there was no piling to prevent the deck of the boat from going thereunder.

He had had orders from the superintendent of the Lamport & Holt Company to keep that part of the pier clear before he left every night. During the day, when the tide permitted, boats were put there only at high tide. At low water it was impossible for berthing because the tide would force the boat underneath and the cheek piece would do damage to the deckhouse. The widest part of the cheek piece apparently was but two and a half feet and its purpose was to protect the corner of the dock.

This unsafe condition of the dock had existed for about two months and was known to the Pennsylvania Railroad Company's tugs that had used the slip.

He was in charge of the shifting tug to keep the slip clear; and at the time that he left at 10 o'clock that night he said that there were other berths available for a tug with a barge in addition to the outer end of the north side of Pier 14.

Conklin's conclusion is that the berth given to the scow by the Pennsylvania tug was not safe; and it seems to me, from his description of the condition of the dock, that such must have been the fact.

The burden was on the charterer to return the boat at the end of the term in as good condition as when delivered, less ordinary wear and tear. Tomkins Cove Stove Co. v. Bleakley Transportation Co., Inc., (C. C. A.) 40 F.(2d) 249.

Libelant here made out a prima facie case of negligence against the charterer. The proof consisted in showing that its barge was damaged by reason of having been tied up to an unsafe berth. There is nothing in the record to show that the bargee had anything to do with the selection of the berth. On the contrary, he made some protest to the captain of the tug. The bargee was obliged to follow the charterer's orders and was justified in accepting the conclusion of the charterer that the berth was safe. See The Eastchester (C. C. A.) 20 F.(2d) 357, 359, wherein it was said: "Having been placed in this berth by the tug * * * we think the bargee was justified in assuming the berth to be safe and making no investigation for himself."

I conclude the negligence was that of the charterer to which the libelant in no way contributed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.

Settle decree on notice.